## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

MARK T. VERNON,                                 )
                                                )
           Plaintiff,                          )
                                                )
v.                                              )     Case No. CIV-11-815-HE
                                                )
ELDON DICKSON, et al.,                          )
                                                )
           Defendants.                         )

## REPORT AND RECOMMENDATION

Plaintiff, Mark T. Vernon, appearing through counsel, brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while he was incarcerated in the Kingfisher County Jail (KCJ). Chief United States District Judge Joe Heaton referred this matter to the undersigned Magistrate Judge for initial proceedings pursuant to 28 U.S.C. § 636.

Three motions for summary judgment are before the Court. The County of Kingfisher has filed a Motion for Summary Judgment[1] [Doc. No. 103] (Board's Motion) to which Plaintiff has responded. [Doc. No. 106] (Response to Board). The Board has replied to Plaintiff's Response. [Doc. No. 111] (Board's Reply). Defendants Justin Conner, Veronica Orozco, Bryan Blankenship, Barry Riley, and Eldon Dickson (collectively the KCJ Defendants), all of whom were working in various capacities at KCJ at all times relevant to this action, have jointly filed a Motion for Summary Judgment [Doc. No. 104] (KCJ Defendants' Motion) to which Plaintiff has responded. [Doc. No. 107] (Response to KCJ Defendants). The KCJ Defendants have replied to Plaintiff's Response. [Doc. No. 112] (KCJ Defendants' Reply). Defendant Dennis Banther,

---

[1] The appropriate title for this Defendant is "Board of County Commissioners of Kingfisher County." Thus, this Defendant will be referred to as the "Board."

Sheriff of Kingfisher County at all times relevant to this action, has filed a separate Motion for Summary Judgment [Doc. No. 105] (Sheriff's Motion) to which Plaintiff has responded. [Doc. No. 108] (Response to Sheriff). Defendant Banther has replied to Plaintiff's Response. [Doc. No. 113] (Sheriff's Reply). Defendant Banther has also filed a verified, court-ordered Special Report [Doc. No. 93] (SR).

## I. BACKGROUND

This action is before the Court following an extended stay of proceedings during which this Court sought representation for Plaintiff. On March 3, 2014, Counsel entered her appearance on Plaintiff's behalf [Doc. No. 86], and the stay was lifted.

Defendant Board has included a statement of allegedly undisputed facts that the KCJ Defendants and the Sheriff have adopted. Board's Motion at 7-22. In his Response to the Board, Plaintiff addresses each fact and identifies which facts he admits, and which facts he disputes. Response to Board at 2-9.[2] This section is limited to facts upon which all parties agree.

On November 5, 2010, Plaintiff was booked into KCJ as a pretrial detainee. He was arraigned on multiple state criminal charges in the District Court of Kingfisher County, Oklahoma, a few days later. Board's Motion at 7; Response to Board at 2; *see also State v. Vernon*, No. CF-2008-11 (Kingfisher County District Court, filed Feb. 8, 2008).[3] Plaintiff continued to be held at KCJ during his trial and, for a time, after his conviction. Board's Motion at 7; Response to Board at 2; *State v. Vernon*, (docket entries of May 23, 2011). On July 13,

_____

[2] Plaintiff adopts this section of his Response to Board in his Response to KCJ Defendants and his Response to Sheriff. *See* Response to KCJ Defendants at 1; Response to Sheriff at 4. Response to Board at 1-9.

[3] The Court takes notice of the docket sheet for this case. The docket sheet is available at OSCN.net.

2011, Plaintiff was sentenced to multiple life sentences, and on September 1, 2011, Plaintiff was released from KCJ into the custody of the Oklahoma Department of Corrections (ODOC). Board's Motion at 7; Response to Board at 2; *State v. Vernon*, (docket entries of July 13, 2011).

On July 18, 2011, before his transfer into ODOC custody but after his conviction, Plaintiff, proceeding pro se, filed this action against the Board, the KCJ Defendants in their official and individual capacities, and Defendant Sheriff in his official and individual capacities. *See* Complaint [Doc. No. 1] at 1, 10. Plaintiff filed his Second Amended Complaint [Doc. No. 38] on May 8, 2012. This pleading was initially scanned into the Court's electronic filing system with two pages unintentionally omitted. By order of the Court [Doc. No. 117], the pleading was rescanned and refiled as the Second Amended Complaint on June 25, 2015. *See* [Doc. No. 118]. When referring to the Second Amended Complaint, the Court will use the page numbers assigned to the latter filing by the Court's electronic case filing system.

In response to the corrected filing, Defendants filed a joint supplement to their respective Motions for Summary Judgment. [Doc. No. 120] (Supplemental Motion). Plaintiff filed a joint supplemental response. [Doc. No. 121] (Supplemental Response).

While this federal action was pending, the Oklahoma Court of Criminal Appeals (OCCA) reversed and remanded Plaintiff's criminal conviction and sentence. *See* Summary Opinion, Case No. F-2011-661 (Okla. Crim. App. Aug. 8, 2013) [Doc. No. 107-1]. Upon remand to the Kingfisher County District Court, the prosecutor dismissed the charges against Plaintiff without prejudice, and Plaintiff was released from state custody. *See* Notice of Change of Address [Doc. No. 87]; *see also* Motion to Dismiss Charges [Doc. No. 87-1].

## II.     PLAINTIFF'S CLAIMS

In the "Nature of the Case" section of his Second Amended Complaint, Plaintiff

succinctly numbers and identifies his claims of constitutional violations. The remainder of Plaintiff's Second Amended Complaint consists of out-of-order pages, part of which is written on this Court's standardized form for civil rights complaints. To avoid confusion, the numbered issues identified in the Nature of the Case section will be referred to as "Claims."

1. Claim One: Plaintiff alleges Defendants acted in "[r]eckless & deliberate indifference" to his safety as evidenced by alleged beatings he received from other inmates with whom he was incarcerated. Second Amended Complaint at 7, 8-9.

2. Claim Two: Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs. *Id.* at 7, 9-11.

3. Claim Three: Plaintiff asserts Defendants denied him the right to have confidential communications with his attorney and unhindered access to his legal mail and legal papers during the approximately ten months Plaintiff was housed at KCJ. *Id.* at 7, 13-15.

4. Claim Four: Plaintiff complains Defendant Sheriff Banther and his deputies required Plaintiff to be chained and shackled at all court appearances including trial. *Id.* at 7, 15.

5. Claim Five: Plaintiff alleges he lived in "[i]nhumane & barbaric conditions" at KCJ. He alleges he was subjected to a lack of heat during subfreezing temperatures, an insufficient daily diet, and deprivation of adequate toiletries. *Id.* at 16-18.

6. Plaintiff alludes to a sixth claim based on the Equal Protection Clause. This claim is, however, merely a reiteration of his other five claims asserted under a different legal theory. Plaintiff does not rely upon any additional factual allegations to support his equal protection claim, and the Court cannot reasonably construe the allegations as a stand-alone legal claim. *See Id.* at 23.[4]

---

[4] Even if analyzed as an independent equal protection claim, such a claim would be subject to dismissal for failure to state a claim upon which relief may be granted. *See* 42 U.S.C. § 1997e(c). To state an equal protection claim, a plaintiff must allege he has been intentionally treated differently than similarly situated individuals. Plaintiff has made no such allegations. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *SECSYS, LLC v. Vigil*, 666 F.3d 678, 688 (10th Cir. 2012). Further, Plaintiff has not alleged facts in the Second Amended Complaint showing that he is a member of a protected class or facts showing any distinction in treatment as opposed to other inmates was not for a legitimate penological purpose. *See Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006). Plaintiff's allegations, therefore,

## III. STANDARD OF REVIEW

Summary judgment should be granted if the movant demonstrates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court views the evidence and the inferences drawn from the record in the light most favorable to the non-moving party. *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must identify sufficient admissible evidence to allow a reasonable jury to find in the nonmovant's favor; in other words, the nonmovant must demonstrate there is a question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Parties may establish the existence or nonexistence of a material disputed fact by citing depositions, documents, electronically stored information, affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials in the record; by demonstrating the materials cited do not establish the absence or presence of a genuine dispute; or by demonstrating an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)-(B). The verified Second Amended Complaint is treated as an affidavit for summary judgment purposes. *See Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988); Second Amended Complaint at 25; Fed. R. Civ. P. 56(c)(4).

---

do not plausibly suggest that Plaintiff has been treated differently from others who are similar "in every relevant respect" and do not state a plausible equal protection claim. *See Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994).

## IV. ANALYSIS

### A. Exhaustion of Administrative Remedies

All Defendants have asserted an affirmative defense based on Plaintiff's alleged failure to exhaust his administrative remedies before filing this lawsuit. A thorough review of the record before the Court confirms that Plaintiff failed to exhaust his administrative remedies as to Claim One, alleging Defendants failed to adequately protect him from attacks by other inmates and were, therefore, deliberately indifferent to his safety; and Claim Four, alleging Defendant Sheriff and his deputies violated his constitutional rights by requiring him to be shackled at all court appearances.

#### 1. The PLRA

The Prison Litigation Reform Act of 1995 (PLRA) provides that no action under 42 U.S.C. § 1983 may be brought by a prisoner "confined in any jail, prison, or other correctional facility" regarding conditions of confinement "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 90, 93-103 (2006) (explaining that Section 1997e(a) requires "proper exhaustion," by "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)" (internal quotation marks omitted)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Ngo*, 548 U.S. at 90-91.

#### 2. The Kingfisher County Jail Grievance Process

Upon being booked into KCJ on November 5, 2010, Plaintiff signed a receipt acknowledging that he had read and understood the written Kingfisher Sheriff's Department Jail

Facility Rules. [Doc. No. 103-3] (Jail Facility Rules). Jail Facility Rule Number 14 prescribes: "Any prisoner that has a gr[ie]vance must submit it in writing to the jailer on duty." *Id.*

Employees of the Kingfisher County Sheriff's Office are governed by "The Kingfisher Sheriff's Office Policies and Procedures" [Doc. No. 103-8] (Policy and Procedures). Section J.01 of the Policy and Procedures governs handling of inmate grievances. *Id.* As discussed further below, Plaintiff disputes whether he was adequately apprised of these Policies and Procedures, but he does not dispute their applicability to the facility or the veracity of the copy of Section J.01 submitted by Defendants. Response to Sheriff at 19-20.

Pursuant to Section J.01, an inmate's grievance must be written "on an Inmate Grievance form signed by the inmate, receiving staff member, dated and timed." Policy and Procedures at 1, ¶ 1. "The grievance shall state fully the time, date, and names of those Deputies and/or staff members involved. Pertinent details of the incident including the names of any witnesses." *Id.* at 1, ¶ 2. The jail staff member or deputy who receives the grievance must deliver it "promptly and without interference to the Facility Administrator." *Id.* at 1, ¶ 1. "If the inmate does not believe the situation was properly addressed" by the Facility Administrator, he or she "can file a grievance with the Sheriff." *Id.* Grievances are to be signed by the officer receiving them and promptly answered by the Facility Administrator or Sheriff:

> Any inmate who submits a grievance to the Facility Administrator or Sheriff shall receive a response within a reasonable period of time following the investigation of the grievance, to include findings and actions taken.
>
> Review: All cases may be forwarded to and received by the Sheriff.
>
> Note: ALL GRIEVANCE FORMS WILL BE SIGNED BY THE OFFICER RECEIVING THE FORM!!! NO ACCEPTIONS [sic].

*Id.* at 2, ¶¶ 6-7.

Upon receipt of a grievance, the Facility Administrator or Sheriff must review the grievance to determine whether the complained-of conduct constitutes "a prohibited act … [a]

7

violation of the inmate[']s civil rights, [a] criminal act, or [an] abridgment of inmate privilege as cited in the posted rules." *Id.* at 1, ¶ 3. If the grievance reports such a prohibited act, the Facility Administrator or Sheriff "shall order a prompt investigation." *Id.* at 1, ¶ 4.

### 3. The Sufficiency of Plaintiff's Efforts to Exhaust Administrative Remedies

Although the parties refer to PLRA exhaustion in general terms, it is necessary to examine each of Plaintiff's legal claims to determine whether the claim has been properly exhausted. *Cf. Kikumura v. Osagie*, 461 F.3d 1269, 1282-85 (10th Cir. 2006) (holding PLRA satisfied "so long as [federal prisoner's grievance] provides prison officials with enough information to investigate and address the inmate's complaint internally"), *overruled on other grounds as recognized in Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008); *Palozie v. Pugh*, 118 F. App'x 478, 480 (10th Cir. 2004) (affirming district court's dismissal for failure to exhaust where plaintiff's administrative grievance documents did "not necessarily match with specificity the claims raised" in the complaint and did "not address the specific claims made against the specific defendants in the current controversy"). *See generally Jones v. Bock*, 549 U.S. 199, 219-20 (2007) ("All [courts] agree that no unexhausted claim may be considered.").

#### a. Claim One: Deliberate Indifference to Plaintiff's Safety

In his Second Amended Complaint, Plaintiff alleges that Defendants demonstrated "[r]eckless & deliberate indifference" to his safety at KCJ, as evidenced by Plaintiff's having been "attacked & beaten on 8 different occasions" by other inmates during his ten-month stay at the facility. Second Amended Complaint at 7-8. Plaintiff alleges multiple attacks took place between November 6, 2010 and February 20, 2011. *Id.* at 8-9.

In the Special Report, Defendant Sheriff states under penalty of perjury that "[u]pon a review of all grievances presented by Plaintiff, Defendant Sheriff did not find any grievances

filed by Plaintiff" regarding the altercations outlined in Claim I of the Second Amended Complaint. SR at 6. In seeking summary judgment, Defendants contend that Plaintiff properly filed a single grievance on February 4, 2011. Defendants contend, however, that the February 4, 2011, grievance "d[id] not reference any of the alleged altercations [that] allegedly took place prior to that date, or request to be moved to a different location." Sheriff's Motion at 16; Board's Motion at 11; Response to Board [Doc. No. 106-16]; Special Report [Doc. No. 93-4]. (Grievance of Feb. 4, 2011). Defendants are correct. The Grievance of February 4, 2011, raised the following issues:

- Inadequate food;

- Inadequate heat;

- Razors and grooming supplies withheld before court appearances;

- Inadequate toiletries, such as toilet paper, routinely denied by Defendant Orozco; and

- Unanswered Grievances.

Plaintiff does not dispute Defendants' characterization of this grievance but argues that he actually submitted four grievances on February 4, 2011, "one of which contained a request that he be moved to a safer location." Response to Board at 4, (*citing* Deposition of Mark Tracy Vernon) [Doc. No. 103-1] at 174, 185. Other than his own deposition testimony, Plaintiff has produced no evidence of any additional grievances filed on February 4, 2011.

Defendant Dickson wrote a Grievance Response to Plaintiff dated February 4, 2011. Board's Motion [Doc. No. 103-24] (Grievance Response). Defendant Dickson's Grievance Response stated that he had addressed nine complaints with Plaintiff in person. Board's Motion at 20; Response to Board at 8. The Grievance Response does not specifically address the issues of inadequate food and heat raised in the actual Grievance of February 4, 2011. Rather,

Defendant Dickson's response appears to address a "grievance letter/letter of intent to bring lawsuit."[5]  Board's Motion at 20; Response to Board at 8.

The copy of Plaintiff's February 4, 2011, grievance provided to the Court appears to be incomplete as Plaintiff wrote, "See attached page," at the bottom of the grievance form. Grievance of February 4, 2011.  The grievance was not signed on the single page by any jail official or employee.  Nevertheless, the Defendants acknowledge on the grievance itself that Defendant Dickson addressed the issues raised therein.  The grievance was obviously appealed to Defendant Sheriff.  On the top of the form, Plaintiff has written, "Attn. Sheriff Dennis Banther." Defendant Sheriff has written, "Received Feb. 7th 2011.  Spoke w/ Eldon who said he received this Grievance on 02-04-2011 and spoke with Mr. Vernon in person about his complaints.  D.B." *Id.*  Although Defendant Dickson's Grievance Response states he had addressed additional issues raised by Plaintiff including: "[n]o access to outside information;" "[w]ithholding religious material;" "[j]ail rules and regulations;" "[t]ampering with mail;" and "[i]mproper clothing for court;" these responses address the claims asserted in the Letter of Intent to Bring Lawsuit. Grievance Response.  The Letter of Intent to Bring Lawsuit does not meet the requirements of a properly filed grievance and will not be considered as such.

Both Plaintiff and Defendants have submitted identical single-page documents, representing them to be copies of the Grievance of February 4, 2011.  *See* Board's Motion [Doc. No. 103-6]; Response to Board [Doc. No. 106-16]; SR at 2.  The parties have explained or even addressed this apparent omission of evidentiary material from the record.

Thus, from the record before this Court, it is apparent that Plaintiff brought no grievances regarding the alleged repeated assaults by other inmates, the basis of Claim One: that Defendants

---

[5] A copy of the Letter of Intent to Bring Lawsuit is included in the record.  [Doc. No. 108-9].

were deliberately indifferent to his safety. Sheriff's Motion at 13-17. Whatever the contents of the missing page of the grievance may have been, Plaintiff admits that the grievance "d[id] not reference any of the alleged altercations [that] allegedly took place prior to that date." Board's Motion at 11; Response to Board at 4. Moreover, Defendant Dickson's Grievance Response does not address any inmate-violence issues or reflect that such an issue was raised. Grievance Response of February 4, 2011.

Plaintiff argues—but produces no evidence beyond his own deposition testimony—that he submitted three additional grievances on February 4, 2011. Response to Board at 4. But Plaintiff does not claim that these alleged grievances actually informed KCJ officials of any of the alleged inmate assaults. Plaintiff claims only that one of them "contained a request that he be moved to a safer location." *Id.*[6]

The evidence in the record, construed in the light most favorable to Plaintiff, the non-moving party, does not support a finding that Plaintiff's grievance efforts reasonably would have provided KCJ officials a sufficient opportunity to address his failure-to-protect claim internally. Such is the primary purpose of requiring an inmate to exhaust administrative remedies before bringing a federal action. *See Porter v. Nussle*, 534 U.S. 516, 525 (2002) ("In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation."); *Kikumura*, 461 F.3d at 1282-85; *Palozie v. Pugh*, 118 F. App'x 478, 480 (10th Cir. 2004) (affirming dismissal for failure to

---

[6] Plaintiff may have been referring to four letters he wrote months later on September 1, 2011, two of which were addressed to Defendant Dickson and two addressed to Defendant Sheriff. All four letters deal with issues allegedly raised on behalf of "all of the west side inmates." In two of these letters, Plaintiff requested that another inmate be transferred because of that inmate's health issues, but Plaintiff nowhere raises the physical assaults underlying his first claim; nor does he request that *he himself* be moved to another location. SR [Doc. No. 93-4] at 6-9.

exhaust where the plaintiff's documents did "not address the specific claims made against the specific defendants named in the current controversy"). Plaintiff's Grievance of February 4, 2011, does not reflect the incidents factually supporting his legal claim of failure to protect. "To exhaust administrative remedies, an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Okla. State Penitentiary,* 511 F.3d 1109, 1112 (10th Cir. 2007); *cf.* Section J.01 ¶¶ 1, 3 (prescribing that a grievance shall be made "promptly following the incident" and "state fully the time, date, and names of those Deputies and/or staff members involved"). Because of Plaintiff's failure to exhaust his administrative remedies, Defendants are entitled to summary judgment on Claim One of the Second Amended Complaint.

### b.    Claim Two: Denial of Medical Care

Plaintiff contends he was denied proper medical care while incarcerated at KCJ. Defendants initially argued that Plaintiff had not filed any grievances regarding allegations of denial of medical care. *See* SR at 8; Sheriff's Motion at 16. Plaintiff responded by producing copies of three grievances, all signed by KCJ jailers, and all regarding Defendants' failure to provide him with supplements and medication that had been prescribed to him. *See* Grievance of March 4, 2011 [Doc. No. 106-12]; Grievance of May 29, 2011 [Doc. No. 106-13]; and Grievance of August 26, 2011 [Doc. No. 106-14]. Defendants reply only that these documents were not contained in Plaintiff's jail file and that because several of them are illegible, Plaintiff has failed to directly refute Defendants' contention. Board's Reply at 4.

Defendants have failed to meet their burden to demonstrate the absence of a factual issue as to whether Plaintiff properly exhausted his administrative remedies for at least some issues in Claim Two regarding the sufficiency of medical treatment he received at KCJ. The three grievances in the record, all of which reflect receipt by KCJ officials, concern complaints

regarding Plaintiff's medical care.[7]  Parts of the grievances are, in fact, illegible, and Plaintiff does not attempt to enlighten the Court as to the exact contents of the grievances.  But the Grievance of March 4, 2011, is clear enough to indicate Plaintiff is complaining that he had not received supplements that had been approved for his use by the prison doctor on March 1, 2011.

The Grievance of May 29, 2011, references Plaintiff's May 26, 2011 trip to the emergency room of the hospital in Kingfisher where Dr. Matson "sewed back up" a wound on Plaintiff's forehead.  The Grievance of May 29, 2011, also references the delay in receiving pain medication Dr. Matson prescribed to him on that date.

The Grievance of August 26, 2011, clearly states, among other unrelated things, that Plaintiff had been out of medication for five days.  None of these grievances reflects whether any further action was taken.

Unaccompanied by further explanation by Defendants, the three grievances Plaintiff produced raise a genuine issue of material fact as to whether Plaintiff exhausted his administrative remedies as to the aforementioned claims.  Defendants have not, therefore, demonstrated they are entitled to summary judgment based on Plaintiff's alleged failure to exhaust the claims identified above, and the merits of these claims will be considered to determine whether or not Defendants are otherwise entitled to summary judgment.

### c.  Claim Three: Attorney-Client Communications and Access to Legal Papers

Plaintiff next claims that his attorney-client mail, inbound and outbound, was opened and copied; that his meetings with his attorney were recorded; and that he was denied access to his

---

[7] Plaintiff produced another grievance dated May 10, 2011.  Response to Board [Doc. No. 106-17].  This grievance form does not reflect the "proper" filing of a grievance, as it is not signed by a KCJ official.  In any case, the document does not appear to contain any issues not included in the prior grievances.

legal papers. Second Amended Complaint at 13-14. In response to Defendants' nonexhaustion argument, Plaintiff references the Grievance of August 26, 2011. [Doc. No. 106-14]. This document concerns inmate mail, but does not address the allegedly recorded communications with counsel or the alleged withholding of legal documents.

Defendants do not dispute Plaintiff's documentation of the August 26, 2011 grievance, but simply assert that the grievance was not included in Plaintiff's jail file. Sheriff's Motion at 16. Defendants have not met their burden of showing the absence of a fact issue as to whether Plaintiff exhausted his claim regarding his legal mail. Summary judgment is not warranted on Claim Three based on Plaintiff's alleged failure to exhaust administrative remedies.

With respect to Plaintiff's claims that his meetings with his attorney were recorded and that his legal materials were unlawfully withheld, Defendants are entitled to summary judgment. Plaintiff offers no contention or evidence that he ever raised these issues at KCJ or provided jail officials the opportunity to address such issues through the facility's grievance system.

### d.        Claim Four: Physical Restraints at Trial

Plaintiff asserts that Defendant Banther required him to wear chains and shackles during his state criminal trial. Second Amended Complaint at 7. Defendants contend Plaintiff failed to exhaust his administrative remedies on this claim. Defendant Sheriff's Motion at 16. Plaintiff does not present any argument or evidence refuting Defendants' contention. Defendants are entitled to summary judgment on Claim Four based upon Plaintiff's failure to exhaust administrative remedies.

### e.        Claim Five: Conditions of Confinement

Plaintiff next argues that he was subjected to unconstitutional conditions of confinement at KCJ, including: lack of heat during sub-freezing temperatures; receiving a daily diet below

2000 calories per day; and no access to razors, including before a court appearance. Second Amended Complaint at 7, 12, 16, 18.

Plaintiff raised these issues in his Grievance of February 4, 2011. As discussed above, documents produced by Defendants and attached to the Special Report demonstrate these issues in Count Five are exhausted, and Defendants are not entitled to summary judgment on this basis.

> ### 4. Plaintiff's Failure to Properly Exhaust Administrative Remedies for Claims One and Four

Plaintiff does not specifically address his exhaustion efforts relevant to each legal claim but broadly asserts that his claims are not barred by the PLRA because: (i) state agencies, which would include county governments, are not authorized to decide constitutional claims; and (ii) any failure to exhaust should be excused. Response to Sheriff at 18-21. Plaintiff's first argument is simply groundless. A prisoner must exhaust all available administrative remedies to bring a § 1983 action in federal court challenging conditions of confinement. *See* 42 U.S.C. § 1997e(a); *Ngo*, 548 U.S. at 85.

With respect to excusing Plaintiff's failure to exhaust, Plaintiff first argues that the administrative exhaustion process was not "available" to him because he "was never informed that any pursuit of administrative remedies was required." Response to Sheriff at 19-20. According to Plaintiff, he was not given time to read the Policies and Procedures, he did not receive a copy of the Policies and Procedures despite repeated requests, and he "did not know for the first few months of his incarceration" that he needed to request a grievance form. *Id.* at 20. The Tenth Circuit has rejected a similar argument:

> The district court correctly dismissed plaintiff's complaint for failure to exhaust [the county detention center's] grievance procedure. The district court did not resolve any factual dispute between the parties, and, as a matter of law, any factual dispute between the parties as to whether or not plaintiff was ever advised or informed of the prison's grievance procedures was not relevant. This court has

previously rejected a prisoner's assertion that the government should have advised him of the need to follow prison administrative procedures. "The statutory exhaustion requirement of § 1997e(a) is mandatory, and the district court [is] not authorized to dispense with it." *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003). As the Supreme Court has broadly stated: "[W]e stress the point ... that we will not read futility *or other exceptions* into [PLRA's] statutory exhaustion requirement [ ]." *Booth v. Churner*, 532 U.S. 731, 741, n. 6 (2001) (emphasis supplied).

"Section 1997e(a) says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him. The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them." *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

*Gonzales-Liranza v. Naranjo*, 76 F. App'x 270, 272-273 (10th Cir. 2003).

The Tenth Circuit's reasoning is persuasive. "Congress intended to save courts from spending countless hours, educating themselves in every case, as to the vagaries of prison administrative processes, state or federal" and "did not intend for courts to expend scarce judicial resources examining how and by whom a prison's grievance procedure was implemented." *Concepcion v. Morton*, 306 F.3d 1347, 1354 (3d Cir. 2002) (quotation omitted). Moreover, Plaintiff was undeniably aware of the applicable grievance procedure no later than February 4, 2011, as evidenced by the grievance he filed on that date; yet, upon gaining this knowledge, Plaintiff made no effort to seek relief for the repeated assaults he allegedly had suffered during the preceding three months. Plaintiff cannot demonstrate that his lack of knowledge rendered the administrative remedy process unavailable to him or excused his failure to grieve Claim One.

Plaintiff next contends that exhaustion should be excused because statements made by Defendant Blankenship rendered an administrative remedy "unavailable." Response to Sheriff at 20-21. It is true that "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010);

*Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011).  Relying on his deposition testimony, Plaintiff argues that "[i]n response to Plaintiff's written grievance regarding the attack" against Plaintiff by another inmate or inmates on November 9, 2010, Defendant Blankenship "warned Plaintiff that if Plaintiff retaliated in any way, Blankenship would file assault charges against Plaintiff."  Response to Sheriff at 20-21; Plaintiff's Deposition Testimony [Doc. No. 108-3] at 11.  Plaintiff's argument is untenable as justification for a failure to exhaust his administrative remedies.  First, there is no grievance regarding inmate attacks contained in Plaintiff's inmate file or elsewhere in the record beyond Plaintiff's conclusory deposition testimony.  Second, as discussed above, Plaintiff admitted he had not filed any grievances regarding inmate attacks before or in the grievance of February 4, 2011.  Third, in his Second Amended Complaint, Plaintiff alleges that after this attack, "Deputy Blank[e]nship sa[id] he'll talk to" the other inmate; Plaintiff does not mention any threat concerning retaliation for the filing of grievances made by Defendant Blankenship or anyone else.  Second Amended Complaint at 8.  Rather, Plaintiff testified that after Plaintiff told Defendant Blankenship he had been physically attacked, "Mr. Blankenship warned me, if I retaliated in any way, then he would file charges on me for assault."  Plaintiff's Deposition [Doc. No. 108-3] at 11.  Plaintiff states he responded to Defendant Blankenship that he was going to defend himself.  *Id.*  This testimony does not reasonably reflect that Defendant Blankenship was threatening Plaintiff for any possible action, in the past or in the future, that even arguably related to use of the jail's grievance process.  Taken in context, the references to Plaintiff's "retaliat[ion]," and possible assault charges arising therefrom, speak to Plaintiff's potential in-kind return of the other inmates' physical attack; not to Plaintiff's seeking administrative relief from such an attack.  Further, Plaintiff was not deterred by the alleged threat, as evidenced by his submission of multiple grievances after that

date. Thus, Plaintiff's allegation that he was deterred from seeking administrative relief on his claims before filing this lawsuit, is "belied by his own ample grievance record," and Plaintiff has not shown that this purported threat prevented him from seeking administrative relief. *See Escobar v. Mora*, 496 F. App'x 806, 809-10 (10th Cir. 2012) (rejecting plaintiff's attempt to excuse exhaustion based on threats of retaliation where plaintiff had filed grievances regarding other matters).

Finally, Plaintiff contends the "PLRA does not apply to inmates no longer incarcerated at the time of filing suit." Response to Sheriff at 21. This is an accurate statement of Tenth Circuit authority. *See Norton v. City of Marietta, Okla.*, 432 F.3d 1145, 1150 (10th Cir. 2005). But *Norton* does not apply to this case. The relevant question is whether the plaintiff is "confined in a jail, prison, or other correctional facility" "*at the time he files suit.*" *Id.* at 1150 (emphasis added). Plaintiff was confined at KCJ when he filed this lawsuit. *See* Complaint [Doc. No. 1]. Moreover, Plaintiff was still confined at KCJ when he filed his Second Amended Complaint. Second Amended Complaint at 24. The exhaustion requirement of the PLRA is applicable to this case. *See Norton* at 1150-1151.[8]

### 5. Conclusion

Before filing this suit, Plaintiff failed to exhaust his administrative remedies on the issues raised in Claim One and Claim Four. None of the evidence in the record, even when construed in favor of Plaintiff, creates a genuine issue of material fact that would preclude granting

---

[8] In *Norton*, the Tenth Circuit explained that distinguishing between current and former prisoners "is compatible with the purpose of the PLRA. Prisoners often have an abundance of time, while facing a restricted number of enjoyable activities with which to pass the time other than filing suits." *Id. See also Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998) ("Congress deemed prisoners to be pestiferous litigants because they have so much free time on their hands and there are few costs to filing suit."). Once a prisoner is released, however, "costs of litigation rise ..., diminishing the need for special precautions against weak suits." *Id.*

Defendants' motions for summary judgment on these claims. "[E]xhaustion is mandatory under the PLRA[,] and … unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. Defendants' affirmative defense of nonexhaustion of administrative remedies is established as a matter of law, and summary judgment should be entered in favor of Defendants on Claims One and Four.

**B.      Motions for Summary Judgment on Remaining Claims by Defendant Board of County Commissioners of Kingfisher County and Sheriff Banther in his Official Capacity**

The Board seeks summary judgment on the basis that it cannot be held liable for alleged violations of Plaintiff's § 1983 claims, all of which arise from his treatment as an inmate at KCJ. *See* Board's Motion at 23-26.

As the Board notes, a suit against Kingfisher County is properly brought against the "Board of County Commissioners of Kingfisher County." *See* Okla. Stat. tit. 19, § 4 (in all suits against a county, the name in which a county shall sue or be sued shall be, 'Board of County Commissioners of the County of ___). The Board does not assert, however, that Plaintiff's technical failure to name the Board instead of the County is a ground for dismissal, and it will not be treated as such.

Congress did not intend a municipality to be held liable for the constitutional torts of its employees, unless the actions leading to the constitutional violation were taken pursuant to some sort of official municipal policy. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978). Congress *did* intend, however, for "municipalities and other local government units to be included among those persons to whom § 1983 applies." *Id.* at 690. (emphasis added). But there is no concept of respondeat superior in § 1983 claims. *Id.* at 691. Thus, a municipality is only liable under § 1983 for harm caused "through the execution of its

own policy or custom by those whose edicts or acts may *fairly be said to represent official policy*." *Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988) (abrogated on other grounds by *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760 (10th Cir. 2013)) (emphasis added).

The Board argues it is not the proper party because it is an entity distinct from the Sheriff's office and that the Sheriff, not the Board, has "charge and custody of the jail of his county." Okla. Stat. tit.19, § 513. The Board cannot, however, defeat potential liability merely by demonstrating that the Sheriff is the official policymaker at the KCJ. *Bryson v. Oklahoma County, ex rel. Okla. County Detention Center*, 2011 OK CIV APP 98, ¶ 24, 261 P.3d 627, 636; *see also Lopez v. LeMaster*, 172 F.3d 756, 763 (10th Cir. 1999) ("[T]he county may be liable on the basis that [the sheriff] is a final policymaker with regard to its jail, such that his actions 'may fairly be said to be those of the municipality.'") (*quoting Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)). The United States Supreme Court has made it clear that any official or entity whose actions represent official policy may be liable under § 1983. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (*quoting Monell*, 436 U.S. at 694). Moreover, Oklahoma law requires every board of county commissioners in Oklahoma to provide a jail "for the safekeeping of prisoners lawfully committed." Okla. Stat. tit. 57, § 41.5. Providing a jail for the safekeeping of prisoners is a constitutional duty as well as a statutory duty. *Bryson*, 2011 OK CIV APP 98, ¶ 25, 261 P.3d at 637. Additionally, "because the necessary maintenance of a jail is a constitutional duty, a county must first appropriate funds for such duty and any other constitutional duties before any county funds are expended for statutory duties or other functions." Okla. A.G. Opin., No. 07–35, 2007 WL 4699709 (Oct. 23, 2007).

Thus, to establish liability of the Board and Sheriff Banther, in his official capacity, Plaintiff must establish: (1) that Plaintiff was deprived of a constitutionally protected right, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Monell*, 436 U.S. at 694; *Winton v. Board of Commissioners of Tulsa County, Oklahoma*, 88 F.Supp.2d 1247, 1262 (N.D. Okla. 2000). Additionally, a plaintiff must allege facts "to show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Id.* at 769, 770-71. Thus, for each claim of municipal liability, the plaintiff must establish three elements: (1) official policy or custom, (2) causation, and (3) state of mind. *Id.* at 769.

Plaintiff's Second Amended Complaint and his response to the Board's Motion are utterly devoid of references to admissible evidence that would factually support any of the elements necessary to confer liability on the Board for alleged constitutional violations arising from the actions of the Sheriff or the KCJ Defendants. Moreover, Plaintiff has made no allegation and offered no evidence that an official policy or wide spread custom or practice mandated actions that would "almost inevitably" lead to a constitutional injury.

In his response to the Board's Motion, Plaintiff merely reiterates that unidentified customs and practices "were the moving force behind many of the constitutional violations." Response to Board at 13. At this summary judgment stage, such general and conclusory allegations, unsupported by admissible evidence reflecting the Board's involvement (or even identification of an official policy or custom fairly attributable to the Board), is inadequate.

Thus, Defendant Kingfisher County, through its Board of County Commissioners, and Sheriff Banther in his official capacity are entitled to summary judgment.[9]

### C. Defendant Blankenship's Motion for Summary Judgment on Remaining Claims

The only claims against Defendant Blankenship are related to the claims raised in Count One of Plaintiff's Second Amended Complaint—that defendants were deliberately indifferent to Plaintiff's safety. Because that claim is unexhausted, Defendant Blankenship is entitled to summary judgment on Claim One.

Plaintiff alleges an inmate named Walter O'Dell attacked him on November 9, 2010, "for paperwork." Second Amended Complaint at 8. In his deposition testimony, Plaintiff alleged he informed Deputy Blankenship about the attack by writing the facts on a piece of notebook paper and giving it to an unidentified jailer to deliver to Defendant Blankenship. Plaintiff's Deposition [Doc. No. 108-3] at 10. Plaintiff further testified he was handcuffed and taken downstairs to talk to Defendant Blankenship a few days after the attack. *Id.* Plaintiff alleges that Defendant Blankenship said he would "talk to Walter." Second Amended Complaint at 8. As previously discussed, there are no grievances in the record before this Court regarding the alleged attack or Defendant Blankenship's alleged response.

Plaintiff further contends that on December 16, 2010, Defendants Dickson and Blankenship took inmates "Walter O'Dell, Enrique Mendoza, Mike Brown, and Mr. Klien" from the west pod. According to Plaintiff, Defendants Blankenship and Dickson were with Assistant District Attorney Slabosky and that "[t]hese officials ask Tyson Mclain, 'Have you worked over

_____

[9] For the same reasons, the remaining KCJ Defendants are also entitled to summary judgment on the official capacity claims against them. Additionally, Plaintiff does not contend that any of these defendants are responsible for making any policies that could fairly be attributed to the Board or Defendant Sheriff.

the chomos yet?'" *Id.*[10]  Plaintiff does not tie this allegation to any of the alleged attacks by inmates, and there is nothing in the record to indicate any grievance was filed against any of the defendants regarding this alleged remark.

Plaintiff has failed to exhaust his administrative remedies with regard to the claims asserted in Claim I, and Defendant Blankenship is not implicated in any of the other alleged constitutional violations.  Thus, Defendant Blankenship is entitled to summary judgment.

### D.  Motion for Summary Judgment of Defendants Dickson, Conner, Orozco, Riley and Banther on Plaintiff's Remaining Claims

The remaining claims are based on Defendants' alleged deliberate indifference to Plaintiff's serious medical needs; Defendants' alleged interference with Plaintiff's legal mail; Defendants' failure to provide adequate heat and food; and Defendants' failure to provide adequate toiletries, razors, and other grooming supplies, especially before court appearances.

### 1.  Applicable Standards of Review

The Due Process Clause of the Fourteenth Amendment governs the analysis of Plaintiff's condition-of-confinement claims arising prior to his conviction, while Plaintiff was a pretrial detainee.  The Eighth Amendment governs the analysis of Plaintiff's claims arising after his conviction.

The distinction between the applicable constitutional protections is based on the principle that a pretrial detainee may not be punished without due process of law but may be subjected "to the restrictions and conditions of [his] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution."  *Bell v. Wolfish*, 441 U.S. 520, 535-537 (1979); *see also Peoples v. CCA Detention Centers*, *et al.*, 422 F.3d 1090,

---

[10] In his deposition, Plaintiff clarified that "chomos" means "child molesters."  Deposition of Plaintiff, [Doc. No. 106-6] at 8.

1106 (10th Cir. 2005).[11]  Restrictions and conditions that are reasonably related to a legitimate governmental objective are not unconstitutional, so long as the restrictions and conditions are not imposed for the purpose of punishment.  *Wolfish*, 441 U.S. at 538, 540.

In the context of civil rights cases, the different standards applied to Fourteenth Amendment claims and Eighth Amendment claims make little practical difference in the analysis.  Because a pretrial detainee cannot be subjected to punishment without due process of law, a pretrial detainee's claims regarding conditions of confinement may be analyzed using Eighth Amendment standards as a benchmark.  *Craig v. Eberly,* 164 F.3d 490, 495 (10th Cir. 1998); *see also Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009); *Lopez v. LeMaster*, 172 F.3d 756, 759 n. 2 (10th Cir. 1999).  A condition of confinement constituting cruel and unusual punishment in violation of the Eighth Amendment would almost certainly constitute "punishment" of a pretrial detainee in violation of the Fourteenth Amendment; under either analysis it would be unlikely that such a condition would be reasonably related to a legitimate governmental objective.  *See Robinson v. Corriveau*, No. 95-1126, 1995 WL 736276, at *2 (10th Cir. Dec. 7, 1995).

### 2.    Claim Two: Medical Care

In Claim Two, Plaintiff alleges that he was subjected to "[d]eliberate indifference" to his medical needs and medical care.  Second Amended Complaint at 7, 9.

Plaintiff has produced three grievances regarding his medical care.  In the Grievance of March 4, 2011, [Doc. No. 106-12], Plaintiff complains that he was not receiving certain supplements that had been approved by a prison medical provider.  In the Grievance of May 29,

_____

[11] In *Peoples*, the Tenth Circuit noted that *Sandin v. Connor*, 515 U.S. 472 (1995), which sets forth a due process analysis for convicted prisoners, did not alter the analysis applicable to pretrial detainees, as set forth in *Wolfish*.  *Peoples*, 422 F.3d at 1106 n. 12.

2011, [Doc. No. 108-13], Plaintiff appears to be complaining about the medical care he received after another inmate attacked him on May 26, 2011. Second Amended Complaint at 9. In the Grievance of August 26, 2011, [Doc. No. 108-14], Plaintiff states he had not received medication for five days. These grievances track some allegations in Plaintiff's Second Amended Complaint.

When a plaintiff is alleging that inadequate medical care was provided, a medically focused standard of review applies, requiring proof of both an objective and a subjective component. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1276-77 (10th Cir. 2001). The plaintiff must first show that the deprivation of rights is related to an objectively serious medical need: "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."[12] *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (internal quotation marks omitted); *see also Oxendine*, 241 F.3d at 1276-77. If the plaintiff is able to satisfy the objective component of the test, he must then show that the defendant consciously disregarded a substantial risk of serious harm to the plaintiff based on the plaintiff's symptoms as presented to the defendant. *Martinez*, 563 F.3d at 1089-90; *Mata*, 427 F.3d 745, 753 (10th Cir. 2005); *Oxendine*, 241 F.3d at 1277. The Tenth Circuit has summarized:

> Under the Fourteenth Amendment due process clause, "pretrial detainees are ... entitled to the degree of protection against denial of medical attention which applies to convicted inmates" under the Eighth Amendment. *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985). A claim for inadequate medical attention will be successful if the plaintiff shows "'deliberate indifference to serious medical needs.'" *Estate of Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994) (*quoting Estelle v. Gamble*, 429 U.S. 97 (1976)). The Supreme Court

_____

[12] The relevant question is "whether the alleged harm … is sufficiently serious"—not "whether the symptoms displayed to the prison employee are sufficiently serious." *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005).

> cautioned that "an inadvertent failure to provide adequate medical care" does not
> rise to a constitutional violation. *Estelle*, 429 U.S. at 105–06.

*Martinez*, 563 F.3d at 1088.

Plaintiff alleges "Dr. Cammaron" [13] examined him during the second week of November 2010 and prescribed Allopurinol, Omega 3 and ibuprofen "for severe lower joint pain."[14] Second Amended Complaint at 10-11. Plaintiff alleges he was "out of some medications" on May 5 and May 8, 2011. He further alleges he was out of medication for 13 days in May, and again from August 24, 2011 to September 1, 2011. *Id.*

In the Special Report, Defendant Sheriff acknowledges that Plaintiff was out of Allopurinol from May 5, 2011 to May 19, 2011. SR 7; *see also* Medication Log [Doc. No. 93-6]. The medical records show a prescription for Allopurinol was filled on May 18, 2011. [Doc. No. 93-1] at 22. When Dr. Hogan examined Plaintiff on May 20, 2011, Dr. Hogan noted no swelling, no erythema, and no warmth to the touch. Medical Record [Doc. No. 93-1] at 23.

Plaintiff alleges he was taken to the Kingfisher Regional Hospital where Dr. Robin Matson attended him after another inmate attacked Plaintiff about 6:00 p.m. on May 26, 2011. Second Amended Complaint at 9, 11. Plaintiff contends Dr. Matson prescribed Tramadol to control his headache pain from the head injury he sustained. *Id.* at 11. Plaintiff alleges deliberate indifference to his serious medical needs based on the fact that he did not receive any Tramadol until the next day. *Id.*

The medical records show that Dr. Matson treated Plaintiff on the date alleged. Medical Records at 24-26. Dr. Matson ordered a CT scan of Plaintiff's head and three x-ray views of his

---

[13] The person is identified as Cameron Hogan in the Special Report. SR at 7. He is not a party to this lawsuit.

[14] Allopurinol was prescribed for gout. Deposition [Doc. No. 106-6] at 21; Medical Records [Doc. No. 93-1] at 23. Without this medication, Plaintiff states his legs and ankles swell. *Id.*

arm.  Dr. Matson closed a cut on Plaintiff's forehead, prescribed a sling for his arm to be worn for four weeks, and prescribed Tramadol for pain.  *Id.* at 24, 26.  The prescription for Tramadol was written on the evening of May 26, 2011, but it was not filled until the next day.  *Id.* at 25, 27.  The Medication Log supports Plaintiff's claim that he received his first dose of Tramadol on May 27, 2011, at 2:50 p.m.  Medication Log [Doc. No. 93-6] at 17.  Plaintiff contends the delay in receiving Tramadol constituted deliberate indifference to his serious medical needs.

The Medication Log shows Plaintiff received his last Allopurinol on August 17, 2011.  *Id.* at 38.  On July 20, 2011, Defendant Orozco sent a medical request for a refill of Allopurinol to the ODOC.  The form noted that Plaintiff had been convicted and was awaiting reception into the Department of Corrections.  Medical Records at 33.  The request was approved.  *Id.* at 35.  A Patient Specific Refill Sheet in Plaintiff's medical file notes a stop date of August 19, 2011.  The form was apparently filled out on August 12, 2011, for another refill of Allopurinol.  *Id.* at 38.  There is nothing more in Plaintiff's medical records.  Plaintiff was transferred to ODOC custody on September 1, 2011.

Plaintiff's claims regarding the delay in receiving medications do not meet the objective component of a claim for deliberate indifference to serious medical needs.  "Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."  *Sealock v. Colorado*, 218 F.3d at 1210 (*citing Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993)).  Nothing in the record supports a conclusion that Plaintiff suffered substantial harm because of delays in receiving Allopurinol.

Plaintiff also alleges he was in pain because of the delay in receiving Tramadol.  The treatment records from Kingfisher Regional Hospital demonstrate, however, that Plaintiff was

given a 50mg injection of Toradol on the evening of May 26, 2011.[15]  Less than 24 hours later, Plaintiff received his first Tramadol.  Under these circumstances, Plaintiff has not demonstrated that the delay in receiving Tramadol resulted in substantial harm.

### 3.      Claim Three: Interference with Legal Mail

Plaintiff contends his legal mail, both incoming and outgoing, was routinely opened and copied outside his presence by KCJ employees.  He further alleges one of the KCJ Defendants told him she had been throwing his mail away.

The Due Process Clause of the Fourteenth Amendment guarantees state inmates the right to "adequate, effective, and meaningful" access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 822 (1977); *Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992).

To succeed on an access-to-the-courts claim based on interference with legal mail, however, a plaintiff must demonstrate that the interference with his legal mail "resulted in 'actual injury' by 'frustrat[ing],' 'imped[ing],' or 'hinder[ing] his efforts to pursue a legal claim.'" *Simkins v. Bruce*, 406 F.3d 1239, 1243 (10th Cir. 2005) (*quoting Lewis v. Casey*, 518 U.S. at 351–53, & n. 3).  Conclusory allegations of injury in this respect will not suffice.  *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999); *cf. Simkins*, 406 F.3d at 1243-1244 (recognizing sufficient showing of actual injury where prisoner demonstrated specific impact on prosecution of particular case).  Here, Plaintiff has not alleged or substantiated any injury to satisfy the *Lewis* requirement.  Accordingly, Plaintiff's claim regarding the alleged opening of his legal mail cannot withstand Defendants' motions for summary judgment.  *See Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006).

---

[15] Toradol is an anti-inflammatory drug (NSAID) used short-term (5 days or less) to treat moderate to severe pain.  *See* http://www.emedicinehealth.com/drug-ketorolac/article_em.htm

### 4.       Claim Five: Other Conditions of Confinement

Conditions in a detention facility must be "humane," requiring that each detainee be provided with "the basic necessities of adequate food, clothing, shelter, and medical care" and that reasonable measures be taken to ensure each detainee's safety. *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1188 (10th Cir. 2003) (internal quotation marks omitted). Nevertheless, "jail conditions may be 'restrictive and even harsh' without violating constitutional rights." *Id.* (*quoting Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)).

To establish a constitutional violation based on an inhumane condition of confinement, a plaintiff must first allege facts to show that the condition was objectively "sufficiently serious" such that the plaintiff was denied "the minimal civilized measure of life's necessities" or that the condition otherwise posed "a substantial risk of serious harm" to the plaintiff. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). If a plaintiff establishes the existence of such a condition, he must then allege sufficient facts to demonstrate that the defendants exhibited deliberate indifference: that they knew of, and consciously disregarded, the substantial risk of serious harm asserted by the plaintiff. *Id.* at 835-40, 842, 847 (holding that the Eighth Amendment requires prison officials to take reasonable measures to abate such known risks).

Of the remaining allegations of unconstitutional conditions of confinement listed in the Second Amended Complaint, Plaintiff properly exhausted three: that the prison meals sometimes contained fewer than 2000 calories a day; that the heating system was broken for four or five days during a cold period; and that inmates were not provided razors before court appearances or sufficient toiletries in general. Second Amended Complaint at 7; Grievance of February 4, 2011.

Plaintiff first complains that KCJ Defendant Veronica Orozco reduced the number of calories per day in food served to KCJ inmates to fewer than 2000. Second Amended Complaint at 7. Plaintiff has offered no actual evidence to support his claim. Moreover, the only result of the alleged insufficient diet is Plaintiff's allegation that he lost weight during the ten months he was incarcerated at KCJ. Plaintiff contends he weighed 210 pounds on November 6, 2010, when he was weighed at the Webb County, Texas jail. He claims he weighed only 153 pounds on September 1, 2011, when he was transferred to ODOC custody. *Id.* at 10. Information about Plaintiff on the ODOC website[16] substantially supports Plaintiff' allegation as to his weight on September 1, 2011. The document demonstrates that Plaintiff stood 5'8" tall and weighed 158 pounds on his reception date. According to the Body Mass Index (BMI) calculator and tables provided by the National Heart, Lung and Blood Institute (NIH), a person is "obese" if he has a BMI over 30.[17] A BMI between 18.5 and 24.9 is considered "normal weight." *Id.* n. 17. A person weighing 210 pounds and standing 5'8" tall would have a BMI of 31.9 and would be classified as "obese." Thus, Plaintiff would have been classified as "obese" on November 6, 2010. A person weighing 153 pounds and standing 5'8" tall would have a BMI of 23.3. Thus, on September 1, 2011, Plaintiff's BMI would have been classified as "normal." Even when the evidence is viewed in the light most favorable to Plaintiff as the nonmoving party, Plaintiff has failed to demonstrate that the alleged deprivation of food provided by the KCJ during the ten months he was incarcerated there was sufficiently serious to meet the objective prong of the test

---

[16] Offender information may be accessed at this website:
http://docapp065p.doc.state.ok.us/servlet/page?_pageid=393&_dad=portal30&_schema=PORTAL30&SearchMode=Basic&doc_num=166450337&SearchAll=ALL.

[17] A BMI calculator, tables, and other pertinent information may be accessed at:
http://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm.

for deliberate indifference. Defendant Orozco and the rest of the defendants are entitled to summary judgment on this claim.

Next, Plaintiff contends the heating system in the jail was broken between January 29, 2011 and February 5, 2011. Second Amended Complaint at 7, 18. In his recitation of facts, Plaintiff states the heating system was repaired on February 2, 2011, at 4:00 p.m. *Id.* at 18. In the Special Report, Defendant Sheriff acknowledges the heater was broken during this period. He contends, however, that extra blankets and space heaters were distributed in the jail. SR at 12. He further contends that the delay in repairing the heating system is attributable to the inability of the "heat and air company to respond." *Id.*

It is unnecessary to decide whether Plaintiff has produced sufficient evidence to preclude summary judgment on the objective prong of the Eighth Amendment test for deliberate indifference because, even assuming he has, he has not produced sufficient evidence for a rational jury to hold that the Defendants were deliberately indifferent to his health or safety. Prison officials are free from liability if they respond reasonably to risks to inmates. *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994). Plaintiff does not dispute Defendant Sheriff's assertion that space heaters and extra blankets were provided while the heating system was inoperable, nor has he contradicted Defendant Sheriff's assertion that the heating system was repaired as soon as possible. Plaintiff has failed to demonstrate a genuine issue of material fact exists as to whether Defendants acted with deliberate indifference.

Plaintiff's final allegation regarding the conditions of his confinement is that prisoners were deprived of sufficient toiletries such as razors, toilet paper, and soap. In his Second Amended Complaint, Plaintiff alleges that bars of soap are never given to inmates who must share one bottle of soap for showers, toilets and sinks. He further alleges only two rolls of toilet

paper at a time are provided for all inmates to share. Finally, he contends he was not provided with razors before court appearances. Second Amended Complaint at 12.

Total deprivation of soap, toilet paper and razors over an extended period of time might rise to the level of an Eighth Amendment violation. But Plaintiff does not make such an allegation. Rather, Plaintiff does not like the type of soap he is provided, the frequency with which he gets to shave, or the amount of toilet paper available at one time. Such inconveniences do not constitute deprivation of the minimal civilized measure of life's necessities. *See Davison v. Stout*, 44 F. App'x 404, 407 (10th Cir. 2002) (*citing Harris v. Fleming*, 839 F.2d 1232, 1234-36 (7th Cir. 1988) (finding no Eighth Amendment violation when prison officials failed to provide a prisoner with toilet paper for five days, and soap, a toothbrush, and toothpaste for ten days). Plaintiff has failed to demonstrate a genuine issue of fact exists as to whether the conditions of his confinement constitute Eighth Amendment violations to which Defendants were deliberately indifferent.

## RECOMMENDATION

In sum, the motions for summary judgement of Defendant Board of County Commissioners for the County of Kingfisher [Doc. No. 103]; Defendants Justin Conner, Veronica Orozco, Bryan Blankenship, Barry Riley, and Eldon Dickson [Doc. No. 104]; and Defendant Dennis Banther [Doc. No. 105] should be granted.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by the March 2, 2016, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both

factual and legal issues contained herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 10th day of February, 2016.

BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE