# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| MARK T. VERNON, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-11-0815-HE |
| | ) | |
| BRIAN SLABOSKY, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

In this case, plaintiff Mark Vernon asserts claims pursuant to 42 U.S.C. § 1983 arising from his detention in the Kingfisher County jail while awaiting trial on state charges. Defendants are Kingfisher County, its sheriff, and various jail employees. Pursuant to 28 U.S.C. § 636(b)(1)(B), the case was referred for initial proceedings to U.S. Magistrate Judge Bernard M. Jones. Judge Jones has submitted a Report and Recommendation (the "Report") recommending that summary judgment motions filed by all defendants be granted. Plaintiff has filed an objection to the Report. The court has therefore conducted a de novo review of the factual and legal issues raised in the objection.

The background of the case and the relevant standards of review are set out more fully in the Report, and will not be repeated here.

Plaintiff asserts five claims. The first alleges that the defendants were deliberately indifferent to risks to his safety, based on their responses to attacks on him by other inmates. The second asserts deliberate indifference to his medical needs. Claim three alleges interference by the defendants with his legal mail and the recording of his meetings with his attorney. Claim four is for being required to appear in court shackled. The fifth claim asserts

he was deprived of humane conditions of confinement, due to inadequate nutrition, inadequate heat in the jail, and being deprived of necessary toiletries. The Report concluded that plaintiff had not exhausted his administrative remedies as to claims one, a portion of three, and four, as required by the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a). Plaintiff objects to that conclusion as to claim one, arguing he was denied access to the jail grievance process[1] and that he did, in fact, exhaust his administrative remedies.

Plaintiff's deposition testimony is that he submitted a request, written on notebook paper, to be moved to a safer location after he was attacked on November 9, 2010. Doc. No. 106-6, pp. 6–7. Although the request did not comply with the jail's grievance policy, due to the proper form not being used, plaintiff's evidence is that defendant Blankenship, a deputy sheriff involved in jail operations, nonetheless followed up on the complaint by meeting with plaintiff and promising to talk to plaintiff's attacker about the incident. This evidence supports an inference that plaintiff put defendants on notice of at least the first incident. See Ross v. Cnty. of Bernalillo, 365 F.3d 1181, 1186 (10th Cir. 2004) (holding no procedural default occurred where prison accepted a filing and considered it on the merits), overruled on other grounds by Jones v. Bock, 549 U.S. 199 (2007).

Plaintiff also testified that he asked to be moved to a safer location in one of four grievances he submitted on February 4, 2011. Defendants indicate the jail was able to locate only one grievance in plaintiff's file from that date and that it did not include a request to be

---

[1] *Plaintiff asserts he was denied access to the grievance process only as to this claim.*

moved.  The Report noted that plaintiff had produced no evidence other than his own deposition testimony as to the additional claimed grievances.  That appears to be true. However, the plaintiff's own deposition testimony is a permissible form of evidence which may support his factual position.  Fed. R. Civ. P. 56(c)(1)(A).  The court concludes that testimony, coupled with the evidence as to the grievance submitted in November of 2010 (which was also apparently absent from plaintiff's grievance file), is sufficient to at least create a factual dispute as to whether plaintiff exhausted the available administrative remedies.  The exhaustion requirement therefore does not result in summary judgment as to the failure to protect claim, and the question becomes whether a basis for summary judgment has been shown on the merits.

The County (i.e. the Board of County Commissioners and Sheriff Banther in his official capacity) argues it is not liable for the alleged constitutional violation because there has been no showing that any violation resulted from an official county policy or action.  The defendants sued in their individual capacities contend that they are entitled to qualified immunity.

Plaintiff asserts the Board and Sheriff established jail policies providing for segregation of accused child molesters, but that they were not followed during his incarceration in the jail.  He also argues that comments made in the presence of an assistant district attorney show that the Board and the Sheriff "fostered a system" that encouraged the constitutional violations that plaintiff claims.

The evidence upon which plaintiff relies is insufficient to support an inference that

3

his alleged constitutional injuries were the result of a county policy or a decision by a county official with final policymaking authority. See Brammer-Hoelter v. Twin Peaks Charter Acad., 602 F.3d 1175, 1188 (10th Cir. 2010). To the contrary, the evidence is that the county had formal policies requiring the segregation of prisoners like plaintiff. That jail employees may not have appropriately enforced those policies as to plaintiff's incarceration does not translate into a conclusion that the county lacked an appropriate policy. Similarly, evidence of one deputy's comment about treatment of the "chomos," in the circumstances indicated, does not support an inference that the County had a policy or custom of improper treatment. There is no evidence that the person with policy-making authority as to the jail, Sheriff Banther, knew of or acquiesced in any such tacit policy or custom. The court therefore concludes that, while plaintiff's failure to protect claim is not barred by a failure to exhaust administrative remedies, summary judgment for the county and Sheriff Banther, in his official capacity, is nonetheless appropriate as to the failure to protect claim.[2]

As to the claims against defendants in their individual capacities, defendants have asserted the defense of qualified immunity. Where such a defense is raised at the summary judgment stage, the court accepts the plaintiff's version of the facts as long as those facts find support in the record. Thomson v. Salt Lake Cty., 584 F.3d 1304, 1312 (10th Cir. 2009). The plaintiff bears the burden to show both "(1) that the official violated a statutory or

---

[2]*As indicated above, plaintiff challenged the Report's conclusion of non-exhaustion only as to the failure to protect claim. The Report's conclusions of non-exhaustion as to the shackling and recording of meetings with counsel are therefore unchallenged and support summary judgment as to those claims against the County.*

4

constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." Quinn v. Young, 780 F.3d 998, 1004 (10th Cir. 2015) (internal citation and quotation marks omitted).

The second element of this inquiry is satisfied here. The Tenth Circuit Court of Appeals has repeatedly held that inmates have a constitutional right to be protected from violence at the hands of other inmates when prison officials know there is a substantial risk of serious harm. Castillo v. Day, 790 F.3d 1013, 1020 (10th Cir. 2015). This knowledge can be inferred when complaints of previous attacks, in light of other background circumstances, make the risk of harm obvious. Howard v. Waide, 534 F.3d 1227, 1238 (10th Cir. 2008) (inferring an obvious risk of vulnerability to assault given plaintiff's description as openly gay and slight of build). In the circumstances existing here, plaintiff was held on charges of child molestation, which placed him at a "well-known risk[] of assault." Barnett v. Maynard, 992 F.2d 1222 (Table), No. 92-7120, 1993 WL 128704, *2 (10th Cir. Apr. 22, 1993) (unpublished) (holding an Eighth Amendment claim was "clearly state[d]" based on allegations that a prison official incited inmate abuse because the plaintiff was charged with child molestation). Against this legal backdrop, officials would be on notice that deliberate indifference in this case would violate established law.

To satisfy the first element, plaintiff must produce evidence that he suffered harm that is sufficiently serious, and that each defendant knew of the substantial risk of that harm but either disregarded the risk or failed to take reasonable measures to abate it. Castillo, 534 F.3d at 1020–21. He has offered evidence that he received serious physical injuries from the

5

various fights or beatings. Further, considering the evidence in the light most favorable to plaintiff, the court concludes plaintiff's evidence is sufficient to create a justiciable question as to whether defendants Blankenship and jail administrator Eldon Dickson ("Dickson") acted with deliberate indifference to a substantial risk of serious harm to plaintiff.

Plaintiff has offered evidence that shortly after he was moved into the jail, he was assaulted by another inmate who targeted him because he was accused of child molestation. He indicates he reported the assault to Blankenship and asked to be moved, and that Blankenship instead promised to speak to the other inmate involved. However, plaintiff's testimony is that the attacks continued. Plaintiff also testified that Blankenship later asked several inmates, including plaintiff's previous attacker, whether they had "worked over the chomos [child molesters] yet," within the hearing of defendant Dickson. Plaintiff testified that two months later, the same inmate attacked him again, and the resulting altercation was serious enough that multiple inmates were involved in mopping up blood from the floor under the supervision of Dickson and other jailers. Plaintiff's evidence is that he remained at Kingfisher County jail for eight more months, during which time he was attacked three more times. According to plaintiff, these attacks resulted in the loss of several teeth and his hospitalization for a broken arm and for lacerations to his face requiring stitches.

The court concludes this evidence, viewed in the light most favorable to plaintiff, is sufficient to create a justiciable question as to whether defendants Blankenship and Dickson knew of a substantial risk of serious harm to the plaintiff but failed to take appropriate steps to protect him from that risk. Summary judgment will be denied as to the failure to protect

claim against those defendants, but entered per the Report as to defendant Justin Conner.

Plaintiff has also objected to the Report's analysis of his claims for denial of medical care. The Report concluded that plaintiff failed to make the necessary showing as to the objective component of a deliberate indifference claim, in that he did not show the necessary substantial harm from the delays in receipt of his medication. Plaintiff claims that during a fourteen-day period in May 2011, he did not receive medication prescribed to treat gout, which resulted in pain and soreness in his knees.

"[N]ot every twinge of pain suffered as a result of delay in medical care is actionable." Al-Turki v. Robinson, 762 F.3d 1188, 1193 (10th Cir. 2014). An objectively serious medical need may exist where there is a showing of lifelong handicap, permanent loss, or considerable pain resulting from the delay. Id. Pain that is considerable may cause a person to vomit, collapse, and writhe in pain. Id.; Kikumura v. Osagie, 461 F.3d 1269, 1292 (10th Cir. 2006) (overruled on other grounds by Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)). Applying that constitutional standard to plaintiff's proffered evidence, the court concludes the Report reached the appropriate conclusion.

With respect to the claim alleging interference with his right of access to the courts, plaintiff argues the Report did not address his claim that he was harmed by the deprivation of access to trucking magazines. He claims those magazines were necessary to help him develop his legal defense. In the court's view, the Report gave that argument all the discussion it merited. Plaintiff has offered nothing which would plausibly explain why access to trucking magazines would assist him in figuring out, or proving or disproving, his

7

guilt or innocence. So far as appears here, the claim is frivolous.

As to the claim asserting inhumane conditions of confinement, plaintiff does not challenge the Report's conclusions insofar as it rejected his claims based on cold temperatures in the jail or the lack of toiletries. He does, however, object to the Report's rejection of his claim based on inadequate nutrition. Plaintiff principally relies on evidence that he lost fifty-seven pounds over a ten-month period while incarcerated in the jail. The Report concluded the weight loss was not sufficient to suggest constitutionally inadequate nutrition, indicating that changes in plaintiff's Body Mass Index ("BMI")—from "obese" to "normal weight," based on National Institute of Health standards—did not indicate serious injury. That is a reasonable inference from the evidence, and probably the correct one. But it is not the only permissible inference, and evidence of such a significant weight loss, if coupled with other evidence suggesting the unavailability of necessary food, would support an inference of constitutional inadequacy. But evidence of the latter sort is lacking here.

Plaintiff asserts he was deprived of adequate nutrition because the jail served fewer than 2000 calories per day on some occasions. He indicates that on one occasion, he was served a half bowl of cereal instead of a full bowl and that on other occasions the jail would run out of certain types of food. However, plaintiff admitted that when the jail ran out of certain types of food, substitute foods were provided and at no time was there no food at all. Doc. No. 106, at 9 (undisputed fact number 56).

To rise to the level of a constitutional deprivation, a claim of food deprivation must include a showing of "(1) a 'sufficiently serious' deprivation of 'the minimal civilized

8

measure of life's necessities' and (2) 'deliberate indifference' by prison officials to a 'substantial risk of serious harm to an inmate.'" Strope v. Sebelius, 189 F. App'x 763, 765 (10th Cir. 2006) (quoting Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998)). Other courts have concluded that food resulting in a caloric intake of 2000 calories per day is sufficient to meet the constitutional standard. See, e.g., Ingrassia v. Schafer, Case No. 14-3358, 2016 WL 3228409, *1 (8th Cir. Jun. 13, 2016); also Falciglia v. Erie County Prison, 279 F. App'x 138, 141–42 (3d Cir. 2008). More than a single instance of deviation from that standard—such as a partial serving of cereal—is necessary to show a constitutional violation. The court therefore concurs in the Report's conclusion that summary judgment is appropriate as to the inadequate nutrition claim.

The remainder of plaintiff's objections are substantially a restatement of the positions he urged in his summary judgment responses and are appropriately addressed in the Report. Accordingly, the Report [Doc. #127], a copy of which is attached to this order, is **ADOPTED** to this extent: defendants' motions for summary judgment [Doc. Nos. 103, 104, and 105] are **GRANTED** as to all claims and defendants, except as to the failure to protect claim asserted against defendants Blankenship and Dickson. The motions are **DENIED** as to those claims, which remain for resolution.

This case will be set for status conference at an early point, to address scheduling issues as to the remaining claims. The parties are directed to confer, through counsel, to see if an agreed resolution of the remaining claims is possible and, if not, to address the further scheduling issues.

**IT IS SO ORDERED**.

Dated this 14th day of September, 2016.

_____
JOE HEATON
CHIEF U.S. DISTRICT JUDGE